IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RUSSELL MORTON, JR.                   )
           Plaintiff,              )
                                      )
     v.                               )          Civil Action No. 3:23CV618 (RCY)
                                      )
LOUIS DEJOY, *Postmaster General,*    )
*United States Postal Service*,       )
           Defendant.              )
_____  )

## MEMORANDUM OPINION

Plaintiff Russell Morton, Jr. ("Plaintiff" or "Mr. Morton") is a former employee of the U.S. Postal Service, and he brings this action against Defendant Louis DeJoy, Postmaster General of the U.S. Postal Service ("Defendant"), alleging various claims stemming from his employment. The case is before the Court on Defendant's Motion to Dismiss, ECF No. 7. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, Defendant's Motion to Dismiss will be granted.

## I.  RELEVANT PROCEDURAL HISTORY

On August 29, 2023, service was made upon Defendant with respect to a suit brought by Plaintiff in Richmond City Circuit Court. State Ct. R. at 3, ECF No. 1-1.[1,2] On September 28, 2023, Defendant timely removed this action from Richmond City Circuit Court, on the basis of

---

[1] Throughout this opinion, the Court utilizes the page numbers assigned by the CM/ECF system.

[2] The filing date of the state court action is not clear. While the Complaint bears a typewritten date of October 28, 2022, *see* State Ct. R. at 4, ECF No. 1-1, a review of the publicly available state court record associated with the case number on the state court documents, *see generally* State Ct. R., ECF No. 1-1 (showing Case No. CL21-3505), suggests that the state court action was initiated on July 23, 2021. *Cf. Johnson v. James B. Nutter & Co.*, 438 F. Supp. 3d 697, 704 (S.D.W. Va. 2020) ("Courts may . . . 'take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.'" (quoting *Brown v. Ocwen Loan Servicing, LLC*, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016))).

USPS being a party to the suit.[3]  *See* Notice of Removal 2, ECF No. 1; 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after [service]."). After Defendant filed a Motion for More Definite Statement, ECF No. 2, Mr. Morton filed the operative Amended Complaint, ECF No. 5, rendering the Motion for More Definite Statement moot, *see* Order, ECF No. 6.

On November 6, 2023, Defendant filed the instant Motion to Dismiss, ECF No. 7, an accompanying Memorandum in Support, ECF No. 8, and a proper *Roseboro* Notice pursuant to Rule 7(K) of the Local Civil Rules of the United States District Court for the Eastern District of Virginia, *see* ECF No. 9. Plaintiff filed a Response in Opposition on November 29, 2023. ECF No. 10. Defendant filed a Reply on December 5, 2023, ECF No. 11, rendering the matter fully briefed at that time. Without leave to do so, Plaintiff filed various additional documents with the Court, purporting to be responsive to the Motion to Dismiss. *See* Reply Mem. Supp. of Pl.'s Opp'n, ECF No. 12; "Evidence," ECF No. 13; Reply Mem. Supp. Pl.'s Opp'n, Cont'd, ECF No. 14; "Documentary Evidence," ECF No. 15. The Court considers these documents to the extent appropriate and relevant.

## II. BACKGROUND

### A. Factual Allegations

Mr. Morton worked as a Carrier Technician at the U.S. Postal Service ("USPS") Petersburg post office, starting in November 2013. Am. Compl. ¶¶ 3, 9, 45, 54, ECF No. 5. After a work-

---

[3] "[A] suit against [the postmaster general] in his official capacity is treated as a suit against the Postal Service." *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). Mr. Morton does not explicitly use the term "official capacity," but he speaks of Defendant's "role as Postmaster General," Am. Compl. ¶ 4, and brings claims that can only be brought against heads of agencies in their official capacity, *see, e.g.*, *Levesy v. Scolese*, 2023 WL 5835763, at *6 (E.D. Va. Sept. 7, 2023) (Title VII and Rehabilitation Act claims must be brought against the "head of an agency in his official capacity"), *aff'd*, No. 23-2005, 2024 WL 1366769 (4th Cir. Apr. 1, 2024); *see also* discussion *infra* Part IV.

related injury, Mr. Morton was placed in the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP").[4]  *See id.* ¶¶ 5, 26.  Sometime in 2016, Mr. Morton had his OWCP status removed.  *See id.* ¶¶ 5, 26.  Mr. Morton appealed that removal decision.  *Id.* ¶ 26.

From April 2016 to July 2016, Mr. Morton worked in a non-Carrier assignment that involved answering phones at a desk, a sedentary position.  *Id.* ¶ 44; *see also id.* ¶¶ 8–10.  During this time, in May 2016, Mr. Morton had a meeting with the District Reasonable Accommodation Committee ("DRAC").[5]  *Id.* ¶ 7.  In this meeting, Mr. Morton provided a form that expressed his neurologist's desire for Mr. Morton to stay away from performing Carrier duties.  *Id.* ¶¶ 7, 9.  Mr. Morton also had a meeting on June 17, 2016, with supervisors explaining that Mr. Morton "was Light Duty per his OWCP being denied."  *Id.* ¶ 5.

In July 2016, Mr. Morton was placed on "Light Duty"[6] and was offered a custodian position with a two-hour workday at the Petersburg Walnut Hill station.  *Id.* ¶¶ 11–13.  Mr. Morton was supposed to use his leave to be compensated for a full, eight-hour workday.  *Id.* ¶ 13.  Mr. Morton declined the position because he did not have enough paid leave and because the job was not sedentary.  *Id.* ¶ 15.

Mr. Morton was told on July 7 not to return to work until USPS found a position for him.  *Id.* ¶ 17.  Mr. Morton then "filed a grievance."  *Id.* ¶ 18.  Mr. Morton went on leave without pay.  *Id.* ¶ 26.  While Mr. Morton awaited the outcome of his OWCP appeal and was otherwise without

---

[4] OWCP administers the Federal Employees' Compensation Act ("FECA").  *E.g.*, 20 C.F.R. § 10.1.

[5] USPS uses the DRAC to address employees' reasonable accommodation requests pursuant to the Rehabilitation Act.  *E.g.*, *Eggen v. DeJoy*, 2021 WL 6926446, at *2 (D. Neb. Dec. 28, 2021).

[6] Within the USPS's administrative structure, "light duty" status refers to a less strenuous work assignment "'available to those employees whose limitations are not due to occupational injury or illness,' but rather to 'injur[ies] outside of their job duties.'"  *Franklin v. Potter*, 600 F. Supp. 2d 38, 51 (D.D.C. 2009) (first quoting *Peebles v. Potter*, 354 F.3d 761, 764 n.3 (8th Cir. 2004); and then quoting *Hancock v. Potter*, 531 F.3d 474, 477 (7th Cir. 2008)).

income, he took a job with Richmond City Public Schools as a long-term substitute teacher.  *Id.* ¶¶ 28–29.

In January 2017, OWCP granted Mr. Morton's appeal, providing him compensation.  *Id.* ¶ 30.  So, he quit working with Richmond City Public Schools.  *Id.*  Mr. Morton then filed paperwork for Medical Disability Retirement.  *Id.* ¶ 31.

In February 2017, Mr. Morton went to the Petersburg station and saw a "Caucasian/White woman sitting [at] one of the back offices at a desk answering the telephone with no computer access."  *Id.* ¶ 32.  Mr. Morton asked his co-workers who she was, and he was told she was from the Colonial Heights station and "all she does it sit there and just answer the telephone all day."  *Id.* ¶ 33.  This confused Mr. Morton, "because he was told that there weren't any [sedentary] positions available for him, no one was looking for a job for him, nor was he offered anything."  *Id.* ¶ 34.

"During this time," an email was sent to Mr. Morton's supervisor, Chantel Brown, from the USPS Richmond District Manager Eric Thompson, stating that Mr. Morton was a "no work available" employee, "with there being no such employee to be available as such in the USPS Richmond District."  *Id.* ¶¶ 35–36.  Mr. Morton interpreted this as "secretly getting fired" because there was no suitable work available for him "when other USPS carriers received suitable employment."  *Id.* ¶ 37.

In March 2017, Mr. Morton was offered a position with USPS, but he declined the position "mainly because it had USPS Carrier duties."  *Id.* ¶¶ 38–39.  According to Mr. Morton, the position "still had carrier duties," but Mr. Morton "is to have only sedentary work."  *Id.* ¶ 38.  In June 2017, Mr. Morton had an anterior cervical discectomy and fusion neck procedure.  *Id.* ¶ 41.

As time passed, "OWCP wanted Mr. Morton to return to the USPS or they were going to terminate his claim for compensation." *Id.* ¶ 42.  Mr. Morton was then "in contact with his Supervisor Chantel Brown about returning to work and only doing sedentary work." *Id.* ¶ 43.

On November 6, 2017, Mr. Morton was offered a "Limited Duty"[7] position where he would be performing the same sedentary job duties as he was doing from April to July 2016.  *Id.* ¶ 44.  Mr. Morton accepted the offer, and he returned to work in that Limited Duty role at the Petersburg station on November 13, 2017.  *Id.* ¶ 45.[8]

Mr. Morton "put in a request for Reasonable Accommodation of headphone usage due to his . . . neck procedure and not being able to bend his neck to the side with the telephone placed on his shoulders." *Id.* ¶ 46.  His request was not fulfilled by USPS, so Mr. Morton purchased headphones on his own.  *Id.* ¶ 47.  However, the headphones were not compatible with the "outdated" USPS phones, so that issue was not solved.  *See id.*

That same month, the Office of Personnel Management ("OPM") approved Mr. Morton's application for Disability Retirement.  *Id.* ¶¶ 31, 49, 50.  On November 17, 2017, Mr. Morton received his Disability Retirement award letter.  *Id.* ¶ 49.  Mr. Morton "didn't know that he was not due to return to the USPS the following week of November 20." *Id.*  On November 30, 2017, Mr. Morton made his "final departure" from USPS, "[up]on receiving his OWCP Disability Award Letter." *Id.* ¶ 54.

---

[7] "For workplace injuries," USPS "offers 'limited duty' assignments, which are distinct from 'light duty' assignments for non-workplace injuries." *Franklin*, 600 F. Supp. 2d at 58 n.7 (citations omitted).  OWCP "is required to provide for limited duty jobs to accommodate employees with compensable job-related injuries." *Gantner v. Potter*, 2007 WL 3342305, at *3 (W.D. Ky. Nov. 7, 2007) (citing 20 C.F.R. § 10.507).

[8] "Within a week of Mr. Morton's return," he "wasn't treated fairly, and he filed a grievance per supervisor Trenise Bell which led to an EEOC filing." Am. Compl. ¶ 48.  This "EEOC filing" is the subject of a separate case of Mr. Morton's before this Court, where he raises separate claims relating to moving his car from the staff parking lot and denying him the use of an office computer.  *See* Compl. ¶ 7, ECF No. 1-1, *Morton v. DeJoy*, 3:23cv620; *cf. supra* n.2 (explaining that the Court may take judicial notice of such filings).  That EEOC filing appears entirely distinct from the claims in this case, so the Court does not engage further with those facts here.

5

## B. Administrative Claim History

Mr. Morton's Amended Complaint contains only a barebones allegation that he "filed a grievance" at some point between July 2016 and August 2016.  Am. Compl. ¶ 18; *see id.* ¶¶ 17, 19.  However, Mr. Morton's original, now-superseded Complaint alleged that he filed a formal EEOC complaint on September 9, 2016.  Compl. 5, ¶ 4, ECF No. 1-1.  This is corroborated by the copy of the EEOC complaint filed by Defendant.  *See* Def.'s Mem. Supp. Ex. A, ECF No. 8-1 ("EEOC Complaint").[9]

### III. STANDARD OF REVIEW

Defendant seeks dismissal of this action based on both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court discusses below the respective standards for each.

## A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) tests a court's subject matter jurisdiction over a claim.  Motions under Rule 12(b)(1) attack jurisdiction in one of two ways:  facially or factually.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  On a facial attack, the movant argues that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based.  *Id.*  In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would

---

[9] At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters of public record subject to judicial notice.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing Fed. R. Civ. P. 10(c); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).  Several courts in this circuit have found it appropriate to consider an EEOC complaint at the motion to dismiss stage, without converting the motion to one for summary judgment, either determining that it is a document of which a court may take judicial notice, *see Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 538 n.3 (E.D.N.C. 2008), or because the document is deemed integral to the complaint and unchallenged, *e.g.*, *Smith v. Dupont Specialty Prods. USA, LLC*, 2023 WL 7703470, at *3 n.4 (E.D. Va. Nov. 15, 2023) ("The Court may examine the plaintiff's . . . EEOC charge, attached to the . . . defendant's memorandum in support of its motion to dismiss . . . because [it is] integral to and explicitly relied on in the Amended Complaint."); *Brown v. Inst. for Fam. Centered Servs.*, 394 F. Supp. 2d 724, 728 n.2 (M.D.N.C. 2005) (determining EEOC charge to be integral to the complaint inasmuch as "Plaintiff must rely on it to establish [he] has exhausted [his] administrative remedies").  This Court similarly finds it appropriate to consider the EEOC Complaint here.

receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  So, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*  A factual attack on jurisdiction, on the other hand, challenges the factual allegations underlying the assertion of jurisdiction.  *Id.*  In either circumstance, "the burden of proof on a Rule 12(b)(1) motion is on the party asserting that subject matter jurisdiction exists," typically the plaintiff.  5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1350 (4th ed. 2024); *see Moore v. Gregory*, 2024 WL 1774819, at *4 (E.D. Va. Apr. 24, 2024) (citing *Piney Run Pres. Ass'n v. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008)).  A court may grant a Rule 12(b)(1) motion and grant the plaintiff leave to amend, but a Rule 12(b)(1) dismissal without leave to amend is proper when the pleader "cannot truthfully amend" to cure the jurisdictional defect.  Wright, Miller, & Spencer, *supra*, § 1350.

## B. Rule 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint."  *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  A Rule 12(b)(6) motion "is not a procedure for resolving . . . contest[s] between the parties about the facts or the substantive merits of the plaintiff's case."  Wright, Miller, & Spencer, *supra*, § 1356.  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not

required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). All reasonable inferences that can be drawn from the complaint are drawn in the plaintiff's favor. *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020).

However, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.* Ultimately, though, "on a Rule 12(b)(6) motion, the burden lies with the movant to show entitlement to dismissal." *Ziegler v. Dunn*, 2024 WL 761860, at *2 (E.D. Va. Feb. 23, 2024) (citing Wright, Miller, & Spencer, *supra*, § 1357).

Also, a *pro se* complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the

strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023).

If a Rule 12(b)(6) motion is granted, the dismissal generally is not with prejudice, because a district court is normally to "give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected." Wright, Miller, & Spencer, *supra*, § 1357. However, a Rule 12(b)(6) dismissal without leave to amend is appropriate where it appears a plaintiff cannot cure the defect, such that permitting amendment would be futile. *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

### IV.  DISCUSSION

The Amended Complaint asserts thirteen claims:

Count I:          "misclassification of employee;"

Count II:         breach of verbal contract;

Count III:        "unethical practice and behavior;"

Count IV:         libel;

Count V:          "deception;"

Count VI:         violation of Title VII of the Civil Rights Act of 1964;

Count VII:        violation of the Americans with Disabilities Act ("ADA");

Count VIII:       violation of the USPS "EL-305" handbook;

Count IX:         violation of the USPS EL-307 handbook;

Count X:          violation of the National Association of Letter Carriers Joint Contract Administration Manual;

Count XI:         violation of the Federal Employees' Compensation Act ("FECA");

Count XII:        another violation of the ADA; and

Count XIII:       violations of the Rehabilitation Act of 1973 ("Rehabilitation Act").

Am. Compl. ¶¶ 75–130.  Mr. Morton seeks $10 million in various damages.  *Id.* at 12–13.

Mr. Morton has not persuaded the Court that it has subject matter jurisdiction over his tort claims in Counts III, IV, and V, or his FECA claim in Count XI.  And, Defendant has convinced the Court that Mr. Morton fails to state a claim in the remaining counts.  With the exception of Count XI and part of Count XIII, all counts will be dismissed with prejudice.

## A.  The Court Lacks Jurisdiction Over Counts III, IV, V (FTCA)

It is undisputed that Mr. Morton brings Count III, "unethical practice and behavior," Count IV, libel, and Count V, "deception," as torts.  *See* Def.'s Mem. Supp. 12, ECF No. 8; Pl.'s Resp. 9, ECF No. 10.  Thus, Counts III, IV, and V must be construed as claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, which operates as a limited waiver of the federal government's sovereign immunity for certain state-law torts.  *Brownback v. King*, 592 U.S. 209, 210, 212 (2021); *see also Colburn v. United States*, 617 F. Supp. 3d 377, 382 (E.D. Va. 2022) (a district court only has jurisdiction over tort claims against the federal government if claims are actionable under FTCA).  And while there is no dispute that the FTCA applies to "tort claims arising out of activities of the Postal Service," 39 U.S.C. § 409(c); *see Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006), the Court nevertheless finds that it lacks subject matter jurisdiction over Mr. Morton's claims, for two reasons.

First, Mr. Morton has failed to name the proper party, insofar as Mr. Morton names USPS Postmaster General Louis DeJoy as Defendant.  "[T]he only proper defendant in an FTCA claim is the United States."  *Shallow v. Fed. Bureau of Investigation*, 2019 WL 2718493, at *2 (E.D. Va. June 27, 2019) (citing 28 U.S.C. §§ 1346(b), 2674), *aff'd*, 788 F. App'x 189 (4th Cir. 2019).  This alone "results in a fatal lack of jurisdiction."  *Dunn v. U.S. Dep't of Veterans Affs.*, 2019 WL 6842537, at *8 (E.D. Va. Dec. 16, 2019) (quoting *Allgeier v. United States*, 909 F.2d 869, 871 (6th

Cir. 1990)).

On top of that, Mr. Morton has failed to allege that he exhausted his administrative remedies under the FTCA. The FTCA conditions a federal court's jurisdiction on the plaintiff's compliance with 28 U.S.C. § 2675(a), which mandates that such a suit may not be initiated until a plaintiff files an administrative claim with the appropriate federal agency and the claim is finally denied by that agency. 28 U.S.C. §§ 2401(b), 2675(a); *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986). Standard Form 95 ("SF-95") is "the preferred method for a claimant to 'present' his FTCA claim to the appropriate federal agency." *McManus v. U.S. Immigr. & Customs Enf't*, 2023 WL 3127630, at *2 (E.D. Va. Apr. 27, 2023) (first citing 28 C.F.R. § 14.2(a); and then citing *Ahmed v. United States*, 30 F.3d 514, 516–17 (4th Cir. 1994)). So, a plaintiff "must have filed an SF-95 or equivalent prior to initiating th[e] lawsuit," or else "the Court lacks subject matter jurisdiction over the FTCA claim." *Id.* at *3 (emphasis omitted) (first citing *McNeil*, 508 U.S. at 112; and then citing *Messino v. McBride*, 174 F. Supp. 2d 397, 399 (D. Md. 2001)).

Mr. Morton did not plead that he exhausted his administrative remedies with respect to these claims, and indeed he concedes the point entirely. *See* Pl.'s Resp. 9 (conceding that there was "[n]o exhaustion"). He nonetheless contends that this should not doom his claims, first by contrasting his case to *Le v. United States*, where the plaintiffs were represented by counsel. *See id.* (citing *Le v. United States*, 2023 WL 4708003 (N.D. Tex. July 24, 2023)). Mr. Morton says that he could not afford counsel, and therefore he should be exempt from the exhaustion requirement. *Id.* Unfortunately for Mr. Morton, the FTCA's exhaustion requirement applies with equal force to represented and *pro se* plaintiffs. *See McManus*, 2023 WL 3127630, at *2–3. So, this argument fails. Mr. Morton's second attempt to avoid an adverse finding on exhaustion is his argument that a "Standard Form 95 is not required to present a claim under the FTCA." Pl.'s Resp.

11

11.  This is true, but in lieu of an SF-95, Mr. Morton still needed to show that he filed an *equivalent* to the SF-95 before filing this suit.  *See McManus*, 2023 WL 3127630, at \*3.  Neither his Amended Complaint nor his briefs do so.  Because Mr. Morton has failed to satisfy the Court that he filed a "SF-95 or [an] equivalent prior to initiating this lawsuit," the Court must conclude that it "lacks subject matter jurisdiction over the[se] FTCA claim[s]."  *Id.* (emphasis omitted).

Finally, while failure to name the proper party and failure to exhaust his administrative remedies would normally result in dismissal without prejudice, no amendment could cure the underlying defect in Mr. Morton's FTCA claims:  they all rest on intentional torts, which are not among those for which the United States has waived its sovereign immunity.  *Compare* 28 U.S.C. § 2690(h) (excluding from the FTCA's waiver of immunity the intentional torts of, *inter alia*, abuse of process, libel, slander, misrepresentation, deceit, and interference with contract rights), *with* Am. Compl. ¶¶ 78–82 (Count III, "Unethical Practice and Behavior," involving certain knowing acts by postal employees), *and id*. ¶ 83 (Count IV, "Libel"), *and id*. ¶¶ 84–88 (Count V, "Deception").  Dismissal with prejudice is therefore appropriate.  *See, e.g.*, *Burrell v. United States*, 2001 WL 34047380, at \*4 (E.D. Va. Oct. 24, 2001) (dismissing FTCA claims with prejudice after the plaintiff's failure to exhaust administrative remedies because the plaintiff could not sustain a claim under the FTCA for the alleged intentional torts and thus "the claim [could] never survive"), *aff'd*, 33 F. App'x 85 (4th Cir. 2002).

Hence, Counts III, IV, and V will accordingly be dismissed, with prejudice, for lack of subject matter jurisdiction.

## B.  The Court Lacks Jurisdiction Over Count XI (FECA)

Count XI alleges a violation of the Federal Employees' Compensation Act ("FECA"), in particular, "[n]ot abiding by [§] 8151(b)(2)."  Am. Compl. ¶ 100.  Specifically, this is a failure-to-

restore claim, wherein Mr. Morton alleges that Defendant did not "make all reasonable efforts to place, and accord priority to placing," Mr. Morton "in his former or equivalent position" at USPS. *Id.*

The "FECA provides certain '[c]ivil service retention rights' to federal employees who have recovered from a compensable injury." *Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 151 (D.D.C. 2018) (quoting 5 U.S.C. § 8151). The provision at issue here, 5 U.S.C. § 8151(b)(2), provides that if the employee's "injury or disability is overcome within a period of more than one year after the date of commencement of [FECA] compensation," then the federal employer is required to "make all reasonable efforts to place, and accord priority to placing, the employee in his former or equivalent position within such department or agency, or within any other department or agency." Per § 8151, the employee's rights under this section "are governed by regulations issued by OPM." *Nurriddin*, 327 F. Supp. 3d at 151 (citing 5 U.S.C. § 8151(b)).

Under the governing regulations, "claims related to restoration of employment" alleging violations of these rights "must be presented to the Merit Systems Protection Board" ("MSPB"). *Hicks v. Potter*, 2011 WL 13196430, at *4 (E.D. Va. Mar. 28, 2011) (first citing 5 U.S.C. § 8151; and then citing 5 C.F.R. § 353.304)); *accord Nurriddin*, 327 F. Supp. 3d at 151 (citing 5 C.F.R. § 353.304). "Any adverse determination" by the MSPB "must be appealed exclusively to the [United States Court of Appeals for the] Federal Circuit[,] unless the determination is a 'mixed case' in which the [p]laintiff asserts that discrimination motivated the decision" to not restore them according to their rights (in which case an appeal from the MSPB can be made to any appropriate federal district court). *Hicks v. Potter*, 2011 WL 13196430, at *4 (citing 5 U.S.C. § 7703); *accord Fuerst v. Sec'y of the Air Force*, 978 F.3d 369, 371 (6th Cir. 2020) ("[J]udicial review of the [MSPB's] decisions is the job of the Federal Circuit—and only the Federal Circuit," except in the

"mixed cases." (citations omitted)); *Grant v. Dep't of Treasury*, 272 F. Supp. 3d 182, 184 (D.D.C. 2017) (noting that the Federal Circuit "has sole statutory authority to review most MSPB final decisions," with the exception being "appeals from the MSPB involving claims alleging discrimination" in the adverse action, i.e., the mixed cases (citations omitted)).

Here, Defendant contends that Mr. Morton's FECA failure-to-restore claim must be dismissed, because Mr. Morton has failed to allege that he appealed the alleged failure to restore to the MSPB. *See* Def.'s Mem. Supp. 23. Indeed, Mr. Morton's Amended Complaint does not include any allegations about presenting any failure-to-restore claim to the MSPB. *See generally* Am. Compl.[10] Also, Mr. Morton does not squarely respond to this argument in his opposition brief, focusing mostly on Defendant's other arguments. *See* Pl.'s Resp. 19–22.

The Court agrees with Defendant that Mr. Morton has failed to allege that he has appealed this claim to the MSPB. Therefore, in line with precedent from this District, "the Court cannot consider [Mr. Morton's] claim[] related to restoration of employment" in Count XI; he has failed to establish that he presented this claim to the MSPB, and even assuming that he seeks to "invoke[] discrimination" as it relates to the alleged failure to restore, "he has not established . . . that his discrimination claim was decided by the [MSPB]," all of which amounts to failures "depriving this Court of jurisdiction."[11] *Hicks v. Potter*, 2011 WL 13196430, at *4 (citation omitted); *accord McDaniel v. Potter*, 2009 WL 10671422, at *10–11 (C.D. Cal. May 7, 2009) ("[A]n injured

---

[10] Mr. Morton does make some allegations about an appeal within the OWCP system he took as it relates to his claim for compensation under the FECA. *See* Am. Compl. ¶¶ 26, 30. But, compensation under the FECA and restoration of rights under the FECA are two different things; an appeal of a compensation determination is not a restoration-of-rights appeal to the MSPB. *See, e.g.*, *Nurriddin*, 327 F. Supp. 3d at 151 (explaining that compensation decisions are appealed to the Employees' Compensation Appeals Board, whereas restoration of rights issues are appealed to the MSPB (first citing 20 C.F.R. § 10.600; and then citing 5 C.F.R. § 353.304)).

[11] Defendant did not specifically ask for a jurisdictional dismissal, *see* Def.'s Mem. Supp. 23, but the Court is required to consider issues of its subject matter jurisdiction *sua sponte*. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Wright, Miller, & Spencer, *supra*, § 1350.

employee of an agency in the executive branch (including USPS) may appeal to MSPB in the event of an agency's failure to restore, improper restoration, or failure to return an employee following a leave of absence.  Until an employee has received a decision from MSPB, a district court does not have jurisdiction for judicial review of the [MSPB's] decision.  Here, Plaintiff has not produced evidence showing . . . that he filed an appeal to MSPB.  There is no evidence before the Court showing that Plaintiff is seeking judicial review of an appeal to MSPB for failure to restore him as an employee with USPS.  . . . Thus, the Court finds it lacks jurisdiction to hear Plaintiff's restoration claim." (citations omitted)).

For these reasons, the Court will dismiss Mr. Morton's FECA claim in Count XI, without prejudice.

**C.  Plaintiff Fails to State a Claim in Counts I, VIII, IX, and X (USPS Policies)**

Mr. Morton rests Counts I, VIII, IX, and X on alleged violations of USPS policies.  *See* Am. Compl. ¶¶ 75–76 (Count I, "Misclassification of Employee"); *id.* ¶¶ 91–93 (Count VIII, "Violation of the USPS EL-305 Handbook"); *id.* ¶¶ 94–96 (Count IX, "Violation of the USPS EL-307 Handbook"); *id.* ¶¶ 97–99 (Count X, "Violation of the N[ational ]A[ssociation of ]L[etter ]C[arriers] Joint Contract Administration Manual").  Defendant's overarching contention is that these allegations are not premised on actionable law.  *See* Def.'s Mem. Supp. 9–12.  The Court is persuaded by defendant's arguments and will dismiss these counts for failure to state a claim.

1.  "Misclassification of Employee" — Count I

In Count I, Mr. Morton pleads that he was misclassified because he was told by Mr. Seay that Mr. Morton was "Light Duty . . . [w]hen in fact he was to be Limited Duty and a USPS PS 2499 w[as] to be used versus the USPS, HR:mss (LTD_LITE) used," and the district manager classified Mr. Morton as a "No Work Available Employee" when he was subject to the FECA and

thus eligible for other positions.  Am. Compl. ¶¶ 75–76.  Mr. Morton does not explicitly plead any legal basis for this misclassification claim in his Amended Complaint, *see id.*, but the allegations could be reasonably read to allege that USPS violated its own internal policies.  However, such a violation is not actionable.  *See Reynolds v. Brennan*, 2016 WL 749410, at *5 (S.D. Ala. Feb. 1, 2016) ("The Amended Complaint alleges that the Postal Service violated several of its own handbooks, policies, and manuals.  Even if these allegations are true, the Postal Service's internal policies do not represent actionable law." (citation omitted)), *report and recommendation adopted*, 2016 WL 756482 (S.D. Ala. Feb. 25, 2016), *judgment entered*, 2016 WL 768293 (S.D. Ala. Feb. 25, 2016).

In his Response to Defendant's Motion to Dismiss, Mr. Morton does not contest any of the above, but instead contends that "Code of Virginia § 40.2-28.7.7 is at play" in this case.  Pl.'s Resp. 6.  That provision speaks of "Misclassification of workers."  Va. Code Ann. § 40.1-28.7:7.  But Mr. Morton did not mention § 40.1-28.7:7 in his Amended Complaint.  *See generally* Am. Compl.  It is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss," even when the plaintiff is proceeding *pro se*.  *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)) (case involving *pro se* plaintiff); *cf. Willner v. Dimon*, 849 F.3d 93, 114 (4th Cir. 2017) (affirming district court's denial of *pro se* plaintiffs' request for leave to amend that was made in their briefs, but not in a formal motion to amend).  So, Mr. Morton cannot make use of § 40.1-28.7:7 to survive this motion to dismiss.

Count I will be dismissed for failure to state a claim.  And, it appearing that amendment would be futile, the dismissal will be with prejudice.[12]

---

[12] It does not appear to the Court that allowing Mr. Morton to file an additional amended complaint re-casting this claim based on § 40.1-28.7:7 would cure the deficiencies here.  On its face, § 40.1-28.7:7 covers situations where

2.   Violation of USPS EL-505[13] & EL-307 Handbooks — Counts VIII and IX

Counts VIII and IX claim violations of USPS EL handbooks.  Am Compl. ¶¶ 91–96. Handbook EL-505, called "Injury Compensation," serves as "a training tool and a reference guide" to "help injury compensation control office (ICCO) and designated control point personnel perform their jobs."  Handbook EL-505, *Injury Compensation*, at 1 (updated Feb. 2, 2017) https://www.nalc.org/workplace-issues/body/Handbook-EL-505-Injury-Compensation-February-2017.pdf  [https://perma.cc/VC5L-TXJE].      Handbook  EL-307,  called  "Reasonable Accommodation,  An  Interactive  Process,"  serves  to  "provide[]  procedures,  guidance,  and instructions on matters of reasonable accommodation that involve applicants and employees with disabilities in order to assist managers and supervisors in meeting [USPS's] legal and regulatory responsibilities  in  the  day-to-day  decisionmaking  process."    Handbook  EL-307,  *Reasonable Accommodation, An Interactive Process*, at 1 (Aug. 2020), https://www.nalc.org/workplace-issues/resources/ body/el307-2.pdf [https://perma.cc/8UCV-TKMR].

Mr. Morton's claims based on these purported handbook violations fail, because alleged violations do not give rise to freestanding causes of action.  *See Reynolds*, 2016 WL 749410, at *5 ("The Amended Complaint alleges that the Postal Service violated several of its own handbooks, policies, and manuals.  Even if these allegations are true, the Postal Service's internal policies do not represent actionable law." (citation omitted)); *cf. Royster v. DeJoy*, 2020 WL 5231314, at *3 (D. Md. Sept. 2, 2020) ("Royster appears to assert a contract claim based upon an alleged violation

---

workers are not classified as employees, but instead are classified improperly as independent contractors.  It does not purport to deal with misclassification of workers between Limited Duty, Light Duty, and "No Work Available," the focus of Mr. Morton's allegations on this claim.  *See* Am. Compl. ¶¶ 75–76.  Therefore, amending the complaint to invoke § 40.1-28.7:7 on this claim (even assuming that the statute is otherwise applicable to USPS) would be futile.

[13] The Court agrees with Defendant that there appears to be a typographical error in the Amended Complaint, and where Plaintiff cites "USPS EL-**3**05" in Count VIII, he intended to cite USPS EL-**5**05.  *See* Def.'s Mem. Supp. 10 n.9; *see also USPS Handbooks and Manuals*, American Postal Workers Union, https://apwu.org/usps-handbooks-and-manuals.

of USPS's Employee and Labor Manual ('ELM').  However, courts have recognized that USPS employees may not assert breach of contact claims based on ELM violations . . . ."), *aff'd*, 834 F. App'x 41 (4th Cir. 2021).  Counts VII and IX will thus be dismissed with prejudice.

3.   Violation of National Association of Letter Carriers Joint Contract Administration Manual — Count X

Lastly, Count X alleges violations of the National Association of Letter Carriers Joint Contract Administration Manual ("JCAM").  Am. Compl. ¶¶ 97–99.  But, the JCAM is not a contract, nor does it otherwise create an independent cause of action—the JCAM simply operates "as guidance for the application of the [collective bargaining agreement]" between the USPS and the National Association of Letter Carriers.[14]  *Simone v. Brennan*, 2018 WL 1251753, at *4 (N.D. Ohio Mar. 12, 2018); *see Lavorgna v. Potter*, 2007 WL 1173675, at *6 (W.D. Pa. Apr. 18, 2007) ("The JCAM . . . provides guidance for the Postal Service in interpreting the collective bargaining agreement . . . .").

To argue that his claim should survive, Mr. Morton unpersuasively points to the fact that the name of the JCAM "says 'Joint Contract'" and says that "the JCAM doesn't have a disclaimer stating that it is not a contract."  Pl.'s Resp. 8–9.  But, this does not change the fact that the JCAM does not provide legal basis for a claim in and of itself, and as such, Mr. Morton's JCAM-related "allegations do not constitute a statement that [he] is 'entitled to relief.'"  *Reynolds*, 2016 WL 749410, at *5 (quoting Fed. R. Civ. P. 8(a)(2)) (involving an allegation that the Postal Service violated the JCAM).  The Court is persuaded that Count X's defects cannot be cured, and so Count X will be dismissed with prejudice.

**D.  Plaintiff Fails to State a Claim on Count II (Breach of Verbal Contract)**

---

[14] Mr. Morton did not allege in his Amended Complaint that he is a member of National Association of Letter Carriers, *see generally* Am. Compl., though he contends that he was in his Response, *see* Pl.'s Resp. 8.

Count II is styled as "Breach of Verbal Contract."  Am. Compl. ¶ 77.  Mr. Morton bases this claim on the DRAC not "fulfill[ing] their end of the verbal agreement to give Mr. Morton another DRAC meeting after the [meeting] that occurred on May 16, 2016."  *Id.*  Defendant contends that the Amended Complaint (1) fails to sufficiently allege that there was an enforceable contract, and (2) reveals that this breach of contract claim is barred by the statute of limitations.  *See* Def.'s Mem. Supp. 10.  The Court need not assess Defendant's first argument, because it agrees with its second:  this claim based on an alleged oral, unwritten contract fails as time-barred.[15]

Virginia's statute of limitations for claims of breach of an oral contract is three years.  Va. Code Ann. § 8.01-246(4); *see Abernethy v. Donahoe*, 2013 WL 2565744, at *7 n.6 (W.D. Va. June 11, 2013), *aff'd*, 543 F. App'x 352 (4th Cir. 2013).  That three-year clock begins running when "the breach of contract occurs . . . and not when the resulting damage is discovered."  Va. Code Ann. § 8.01-230; *see Abernethy*, 2013 WL 2565744, at *7 n.6, *aff'd*, 543 F. App'x 352.

The promise to provide a second DRAC meeting was alleged to have been made on May 16, 2016.  Am. Compl. ¶ 77.  Assuming that promise formed an oral contract, the latest that a breach of that contract could have occurred (and the latest the limitations clock could have begun running) was on November 30, 2017, when Mr. Morton made his "final departure" from USPS; at that point, it was clear he was not going to get another DRAC meeting.  *See id.* ¶ 54.  Mr. Morton, however, filed this case in state court in 2021.  *See* discussion *supra* n.2.  Mr. Morton does not contest that he failed to file this claim until after the statute of limitations had expired.  *See* Pl.'s

---

[15] On a Rule 12(b)(6) motion, a court may only dismiss a claim based on an affirmative defense when the complaint's "allegations show 'on the face of the complaint' that" the affirmative defense "will be an 'insuperable bar to securing relief.'"  *Ziegler v. Dunn*, 2024 WL 761860, at *4 (E.D. Va. Feb. 23, 2024) (quoting Wright, Miller, & Spencer, *supra*, § 1357).  "The most common situation in which the affirmative defense appears on the face of the pleading . . . is a complaint showing that the governing statute of limitations has run on the plaintiff's claim . . . ."  Wright, Miller, & Spencer, *supra*, § 1357.

Resp. 7 (conceding that he did not "conduct things within a timely manner" with respect to "Virginia's statute of limitations for oral contracts").

However, Mr. Morton asks that this confessed untimeliness not defeat his claim. *See id.* He requests "for equitable tolling to be administered." *Id.* In the present circumstances, the Court is not persuaded that equitable tolling is appropriate under Virginia law.

Under Virginia law, the tolling proponent bears "the burden to prove [their] entitlement to the tolling of the statute of limitations." *Birchwood-Manassas Assocs., LLC v. Birchwood at Oak Knoll Farm, LLC*, 773 S.E.2d 162, 163 (Va. 2015) (citing *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 839, 840 (Va. 2008)). The Virginia Supreme Court has held that, "under certain *extraordinary* circumstances," there may be a basis to equitably toll a statute of limitations. *See Brunswick Land Corp. v. Perkinson*, 151 S.E. 138, 140 (Va. 1930) (emphasis added). "Two such extraordinary circumstances that have arisen in the past are (1) where fraud prevents a plaintiff from asserting its claims, or (2) where the defendant 'has by affirmative act deprived the plaintiff of his power to assert his cause of action in due season.'" *Birchwood–Manassas Assocs.*, 773 S.E.2d at 164 (first citing *Schmidt*, 661 S.E.2d at 838–39; and then citing and quoting *Brunswick Land Corp.*, 151 S.E. at 140).

Mr. Morton has not convinced the Court that, under the Virginia Supreme Court's strict equitable tolling precedents, he is entitled to equitable tolling in these circumstances. Mr. Morton says that he could not "conduct things within a timely manner" because "no one from the USPS EEO contacted Mr. Morton about his 2016 filing." Pl.'s Resp. 7. While unfortunate, this does not rise to an allegation of (1) *fraud* on the part of Defendant or (2) an *affirmative act* taken by Defendant to hinder Mr. Morton's assertion of this claim. *See Birchwood–Manassas Assocs.*, 773 S.E.2d at 164. Accordingly, Mr. Morton does not surmount Virginia's high equitable tolling

hurdle, and so the Court holds that Count II is barred by the statute of limitations.

Count II will thus be dismissed for failure to state a claim, with prejudice.[16]

### E.  Plaintiff Fails to State a Claim on Count VI (Title VII)

Count VI alleges a "Violation of Civil Rights Act of 1964," specifically of Title VII.  Am. Compl. ¶ 89; *see also* Pl.'s Resp. 12–13.  The alleged violation was the "USPS Richmond District placing a Caucasian/White woman . . . in a sedentary position" at Mr. Morton's station "over him[,] after the USPS Richmond District told him that there weren't any positions for him and classifying him as a 'No Work Available' employee."  Am. Compl. ¶ 89.  Defendant contends that Mr. Morton has failed to both (1) properly exhaust his administrative remedies on his Title VII claim, and (2) adequately allege a Title VII violation.  For the following reasons, the Court agrees that Mr. Morton has failed to properly exhaust his Title VII claim.  Therefore, the Court concludes that he fails to state a viable Title VII claim,[17] without needing to consider the claim's substantive sufficiency.

"It is well settled that before filing suit under Title VII . . . , a plaintiff must exhaust [their] administrative remedies by bringing a charge with the EEOC."  *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b), (f)).  "A plaintiff's EEOC charge defines the scope of [their] subsequent right to institute a civil suit."  *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."  *Id.*

---

[16] Where the fact that the statute of limitations on a claim has run is apparent on the face of the complaint, as here, and equitable tolling is demonstrably unavailable, amendment is futile.  *E.g.*, *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 510 (E.D. Va. 2002); *Gallo v. United States*, 499 F. Supp. 2d 697, 700 (E.D. Va. 2007).

[17] Title VII's "requirement[] of administrative exhaustion [is] 'mandatory,'" though it is not jurisdictional, so it is assessed under Rule 12(b)(6)'s rubric.  *Figueroa-Ibarry v. Rennick*, 2021 WL 954843, at *4 (E.D. Va. Mar. 12, 2021) (quoting *Fort Bend Cnty.*, 587 U.S. 541, 551 (2019)).

(alteration omitted) (quoting *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019)).  "If the discrimination claims 'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'"  *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)).  "A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Id.* (quoting *Chacko*, 429 F.3d at 509).

Mr. Morton's EEOC Complaint, filed in September 2016, was limited to just "Disability Discrimination."  *See* EEOC Complaint, ECF No. 8-1.  As such, it may only serve as the predicate to a civil suit maintaining a disability discrimination claim.  *Walton*, 33 F.4th at 172.  It cannot sustain what Mr. Morton now attempts to bring:  a Title VII claim for race and/or sex discrimination.  *See Whitaker v. Nash-Rocky Mt. Bd. of Educ.*, 2013 WL 2635161, at *3 (E.D.N.C. June 12, 2013) ("Title VII does not protect against discrimination based on an individual's disabilities or physical limitations."), *aff'd* 546 F. App'x 209 (4th Cir. 2013); *Walton*, 33 F.4th at 172 (claim will be barred where administrative charge alleged different form of discrimination than is alleged in civil suit).[18]  Therefore, Mr. Morton did not properly exhaust his administrative remedies on his Title VII claim.

Mr. Morton resists on two grounds.  First, he asserts that he exhausted his administrative remedies because his "injury claims are on record since January 13, 2015," and because "Defendant receiv[ed] evidence per the Appendix via the . . . Amended Complaint."  Pl.'s Resp. 12.  But this does not constitute exhausting the proper administrative remedies of this Title VII

---

[18] Mr. Morton does generally allege that he "filed a grievance" in November 2017 "which led to an EEOC filing," *see* Am. Compl. ¶ 48, but there is no suggestion that the race/sex discrimination claim presented in Count VI was raised in that EEOC filing, *see* discussion *supra* n.8.

race/sex discrimination claim by raising that claim through the appropriate administrative channels—e.g., in an EEOC charge—so this argument necessarily fails.  Second, and seemingly alternatively, Mr. Morton acknowledges that he has not "conduct[ed] things . . . timely" but asks "for equitable tolling to be administered," seeking excusal from not having timely brought an EEOC charge relating to his race/sex discrimination claim.  Pl.'s Resp. 13.  But he has not persuaded the Court that equitable tolling is warranted in these circumstances.

The filing of "a timely charge of discrimination with the EEOC is . . . a requirement that . . . is subject to . . . equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).  And "Title VII suits against the government are subject to equitable tolling principles." *Nealon v. Stone*, 958 F.2d 584, 589 (4th Cir. 1992).  However, the Fourth Circuit has made clear that equitable tolling "should be sparingly applied." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987).

Similar to the application of equitable tolling under Virginia law, to demonstrate entitlement to equitable tolling under Fourth Circuit Title VII precedent, a plaintiff-employee must "show that the defendant attempted to mislead him and that the plaintiff reasonably relied on the misrepresentation by neglecting to file a timely charge." *Id.* (citing *Lawson v. Burlington Indus.*, 683 F.2d 862, 864 (4th Cir. 1982)).  There will be no tolling unless the plaintiff-employee's failure to file a timely complaint "results from either a 'deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'" *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 201 (4th Cir. 1990) (quoting *Price v. Litton Business Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982)).  There is "a clear distinction between federal employees who have 'been induced or tricked by [their] adversary's misconduct into allowing [a] filing deadline to pass' and those who have merely 'failed to exercise due diligence

in preserving [their] legal rights.'"  *Weick v. O'Keefe*, 26 F.3d 467, 470 (4th Cir. 1994) (alterations in original) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)).

Mr. Morton has not persuaded the Court that Defendant engaged in any conduct that supports the application of equitable tolling.  Mr. Morton does not plead anything to support equitable tolling in his Amended Complaint as to this claim.  *See* Am. Compl. ¶ 89.  Mr. Morton's only assertion on the point comes in his response brief, where he contends that he is entitled to equitable tolling because "no one from USPS EEO contacted [him] about his 2016 filing and he had to call and inquire about it."  Pl.'s Resp. 13.  But, this is not an allegation of any affirmative misconduct or trickery on the part of Defendant, such that the Court is convinced that Defendant's conduct caused Mr. Morton's failure to file a timely EEOC charge on his race/sex discrimination claim.  The Court thus rejects Mr. Morton's tolling request.

The Court will dismiss Mr. Morton's Title VII in Count VI claim as unexhausted.  Because this failure to exhaust appears to be an incurable deficiency, the dismissal will be with prejudice.[19]

## F.  Plaintiff Fails to State a Claim on Counts VII and XII (ADA)

Mr. Morton brings Counts VII and XII pursuant to the Americans with Disabilities Act ("ADA"), alleging in both Counts that USPS failed to accommodate Mr. Morton's disabilities.  Am. Compl. ¶¶ 90, 101.  However, the ADA does not apply to federal employees.  *See* 42 U.S.C. § 12111(5)(B) (excluding the United States from the definition of "employer" under the ADA).  Rather, "the Rehabilitation Act is a federal employee's exclusive remedy for disability-related

---

[19] Construing the allegations in the light most favorable to him, Mr. Morton discovered this alleged discrimination in February 2017.  So, his 300-day window for filing an on-point EEOC charge has passed.  *See EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001) ("In a deferral state . . . , a charge is timely if it is filed with the Commission within 300 days of the last alleged act of discrimination and served on the company within ten days of being received by the EEOC." (citing 42 U.S.C. § 2000e-5(e) & (e)(1))); *Lewis v. Norfolk S. Corp.*, 271 F. Supp. 2d 807, 811 (E.D. Va. 2003) (identifying Virginia as "a 'deferral' state" and espousing 300-day limit to file EEOC charge).  Courts treat such a failure to properly exhaust administrative remedies as rendering amendment futile.  *See, e.g.*, *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *4 (E.D. Va. Sept. 13, 2023); *Corrigan v. Hood*, 2020 WL 13691765, at *8 (E.D. Va. Jan. 17, 2020), *aff'd*, 836 F. App'x 184 (4th Cir. 2021).

employment discrimination." *McNair v. Spencer*, 2018 WL 2147515, at *6 (E.D. Va. May 3, 2018); *cf.* discussion *infra* Part III.G.  The Court thus will dismiss Counts VII and XII for failure to state a claim, and the Court will do so with prejudice.[20]

**G.  Plaintiff Fails to State a Claim on Count XIII (Rehabilitation Act)**

Count XIII alleges that Defendant violated the Rehabilitation Act ("RA") when it failed to provide Mr. Morton with "a disability reasonable accommodation twice."  Am. Comp. ¶ 103.  Construing the Amended Complaint liberally, those two failures to accommodate are:  (1) the failure to provide Mr. Morton with a sedentary, desk position, *see id.* ¶¶ 38, 43 (alleging Mr. Morton was "to do only sedentary work"); and (2) the failure to fulfill Mr. Morton's request for headphones for his telephone in November 2017, *see id.* ¶¶ 46–47.  For the reasons set forth below, neither instance arises to an actionable failure to accommodate claim.

"The RA expressly incorporates the standards applied under the Americans with Disabilities Act (ADA), § 794(d), which also bars discrimination against a 'qualified individual on the basis of disability,' 42 U.S.C. § 12112(a)."  *Terry v. Perdue*, No. 20-2016, 2021 WL 3418124, at *2 (4th Cir. Aug. 5, 2021) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995)).  Thus, incorporating the ADA standard, to state a claim for failure to accommodate

> the plaintiff must show: '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (alterations in original) (quoting

---

[20] While in most circumstances a court would dismiss such claims without prejudice, to allow the plaintiff to re-plead any erstwhile ADA claim properly as a Rehabilitation Act claim, here, Mr. Morton already asserts a claim in Count XIII based on the Rehabilitation Act and the same instances of discrimination he sought to litigate in his ADA claims.  Recasting the present ADA claims as Rehabilitation Act claims would therefore be a futile re-litigation of an issue already before the Court, and thus dismissal with prejudice is appropriate.

25

*Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)); *see also Okebata v. Dep't of Def.*, 2022 WL 3754201, at *6 (E.D. Va. July 29, 2022) (applying *Rhoads* standard in RA case)*, aff'd*, No. 22-1899, 2023 WL 7212271 (4th Cir. Nov. 2, 2023).

On top of this, however, "[f]ederal employees . . . who seek to enforce their rights under . . . the [RA] must exhaust their available administrative remedies before pursuing an action in federal court." *Melendez v. Sebelius*, 611 F. App'x 762, 763 (4th Cir. 2015) (per curiam) (collecting statutes, binding cases, and regulations); *see Emmert v. Runyon*, 178 F.3d 1283 (4th Cir. 1999) (per curiam) (unpublished table opinion) (collecting authorities). As with other exhaustion requirements discussed previously, "[t]he requirements of administrative exhaustion are 'mandatory.'" though they are not jurisdictional, so they are matters to take up via Rule 12(b)(6). *Figueroa-Ibarry*, 2021 WL 954843, at *4 (quoting *Fort Bend Cnty.*, 587 U.S. at 551); *cf.* discussion *supra* n.17.

As explained below, Defendant has persuaded the Court that (1) Mr. Morton's claim stemming from Defendant's failure to provide a sedentary/desk position is substantively insufficient, and (2) Mr. Morton has failed to exhaust his administrative remedies on his claim stemming from Defendant's failure to provide him with headphones. Therefore, the Court will dismiss Count XII in full.

### 1.   Failure to Provide a Sedentary/Desk Position

Defendant does not contest that Mr. Morton has properly exhausted his administrative remedies with respect to Defendant's alleged failure to provide Mr. Morton with a sedentary, desk-based position. *See* Def.'s Mem. Supp. 18–21. Defendant argues instead that the allegations surrounding the sedentary/desk-position claim do not amount to a plausible claim for relief under the Rehabilitation Act. *See id.* Defendant's objection to the sufficiency of this claim is a narrow

one. Defendant's argument is essentially just that Mr. Morton has failed to plead enough facts to support the third element of his claim: "that with reasonable accommodation [Mr. Morton] could perform the essential functions of the position." *Wilson*, 717 F.3d at 345 (quoting *Rhoads*, 257 F.3d at 387 n.11).

Broadly, this inquiry on a failure to accommodate claim "proceeds in two steps. First, was the specific accommodation requested by [the employee] reasonable? Second, had [the employer] granted the accommodation, could [the employee] perform the essential functions of the position?" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580 (4th Cir. 2015) (citing *Wilson*, 717 F.3d at 345).

As a general matter, "[a] 'reasonable accommodation includes a modification or adjustment to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position.'" *Anderson v. Sch. Bd. of Gloucester Cnty.*, 2022 WL 732231, at *9 (E.D. Va. Mar. 10, 2022) (quoting *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959–60 (4th Cir. 2021)). In certain instances, "[r]easonable accommodation may include reassignment to a vacant position." *Fields v. Clifton T. Perkins Hosp.*, 605 F. App'x 200, 201 (4th Cir. 2015) (per curiam) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)); *accord Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996) (An employer "may [be] require[d] . . . to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of their current position.").

As discussed, Mr. Morton's claim is based on the USPS's failure to provide him with a sedentary, desk position. Am. Compl. ¶¶ 38, 43. Importantly, Mr. Morton's claim is not that

USPS failed to provide him reasonable accommodations to perform the essential functions of his previous job—that of a Carrier Technician. *See id.* ¶ 3 (listing that as his position); *see also id.* ¶¶ 9, 38. Mr. Morton acknowledges that he can no longer carry out the essential functions of that position. *See* Pl.'s Resp. 16 ("Mr. Morton['s] injuries are permanent . . . . How could Mr. Morton perform the essential functions of a Carrier Technician especially when his doctor says no?"). Instead, Mr. Morton's claim is that USPS failed to provide him reasonable accommodations by not finding him a *different* job from that of a Carrier Technician—a sedentary job, the essential functions of which he could fulfill. *See also id.* at 16 ("[I]t was obvious Mr. Morton could perform the essential functions of a sedentary position by conducting them April–July 2016.").

"[A] plaintiff can adequately plead the third element of a failure to accommodate claim by alleging that he requested a transfer to a vacant position" with essential functions he could perform when he can no longer execute the essential functions of his original position. *Harris v. Powhatan Bd. of Supervisors*, 2020 WL 7388626, at *3 (E.D. Va. Dec. 16, 2020). But, it is critical that the plaintiff adequately allege that the new position already (1) is vacant and (2) exists. The RA "only requires reassignment to a *vacant* position as an accommodation for an employee with a disability." *Salmoiraghi v. Veritiss, LLC*, 2022 WL 1036769, at *15 (E.D. Va. Apr. 6, 2022) (quoting *Perdue*, 999 F.3d at 960), *aff'd*, No. 22-1521, 2023 WL 5289371 (4th Cir. Aug. 17, 2023); *see also Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 506 (E.D. Va.) ("[A]n employer need not 'bump' an employee from an existing position in order to accommodate a person with a disability." (citation omitted)), *aff'd*, 250 F. App'x 552 (4th Cir. 2007). And, importantly, the RA "does not require that an employer create a new position for a disabled employee." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 n.3 (4th Cir. 2020).

Defendant contends that Mr. Morton fails to allege enough facts to support the conclusion

that there was an (1) existing and (2) vacant sedentary position to which USPS could have reassigned Mr. Morton, and that it failed to do so.  *See* Def.'s Mem. Supp. 20.[21]  Even construing the Amended Complaint in Mr. Morton's favor, the Court agrees.

The Amended Complaint mentions two other, potentially available jobs.  First, Mr. Morton mentions that in August 2016, he "received a text message from a coworker stating that another Carrier . . . was leaving and received a job position at the USPS Sandston Distribution Center." Am. Compl. ¶ 19.  But Mr. Morton alleges no facts about that Carrier or about the new position, *see generally id.*, leaving the Court unable to discern, among other things, whether that position was a purely sedentary one with essential functions Mr. Morton could perform.  Second, Mr. Morton alleges that, in February 2017, he saw "a Caucasian/White woman sitting [at] one of the back offices at a desk answering the telephone with no computer access," and that, according to Mr. Morton's coworkers, this woman "s[a]t there and just answer[ed] the telephone all day."  *Id.* ¶¶ 32–33.  Mr. Morton's allegation suggests that he believed that this was a job he could do.  *Id.* ¶ 34.  These allegations are too sparse to support Mr. Morton's claim, as the Amended Complaint gives no indication of when this job came into existence or, critically, whether this job was ever vacant at the time(s) Mr. Morton was seeking accommodation.  Therefore, even liberally construing the Amended Complaint and drawing the inferences that it can in Mr. Morton's favor, the Court cannot say that Mr. Morton has alleged sufficient facts to make it plausible that, in not being offered one of these jobs, Mr. Morton was denied a "reasonable accommodation" for RA purposes.

"[A]bsent more facts demonstrating what these jobs entailed that made them reasonable

---

[21] Defendant does not dispute that Mr. Morton requested to be placed in a sedentary role.  *See id.* at 19–20; *see also* Am. Compl. ¶ 9.

accommodations for [Mr. Morton]" in this case, these allegations "are insufficient to 'state a claim for relief that is plausible on its face.'"  *See Bailey v. Klockner Pentaplast of Am., Inc.*, 2017 WL 4081876, at *1 (W.D. Va. Aug. 4, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court believes that Mr. Morton's Amended Complaint "is simply too abbreviated in terms of identifying" and describing these "alternative jobs to survive a motion to dismiss" as currently drafted.  *See id.*  That said, Defendant has not persuaded the Court that this factual deficiency is an incurable one.[22]  The Court will therefore dismiss this claim without prejudice.

2.  Failure to Provide Headphones Claim

The Court is persuaded that Mr. Morton has not exhausted his administrative remedies with respect to his failure-to-provide-headphones claim.  Indeed, Mr. Morton does not dispute that he failed to raise this claim in an EEOC complaint.  *See* Pl.'s Resp. 18.  Nevertheless, he argues that this should not doom this claim, but he only raises arguments that the Court has already rejected.  First, Mr. Morton argues that:  a "Standard Form 95 is not required;" his "injury claims are on

---

[22] The Court pauses to address two other arguments Defendant raises.

First, Defendant states that "the USPS permitted [Mr.] Morton—while waiting for his OWCP appeal and for non-Carrier work—to take paid leave and leave without pay." Def.'s Mem. Supp. 21 (citing Am. Compl. ¶ 26).  And, quoting from a Fourth Circuit case, Defendant argues that "'it is . . . clear that the [Rehabilitation Act] specifically authorizes unpaid leave as a reasonable accommodation[,]' [and so Mr.] Morton's failure-to-reassign reasonable accommodation claim should be dismissed."  Def.'s Mem. Supp. 21 (quoting *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 636 (4th Cir. 2023)).

Defendant takes the *Hannah* case out of context.  Rather than hold that unpaid leave will invariably be a reasonable accommodation in every case, *Hannah* made crystal clear that it is much more nuanced:  "a period of unpaid leave might not always be a reasonable accommodation," but "such leave may be reasonable where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work."  *Hannah*, 72 F.4th at 636–37.  Defendant has not persuaded the Court that the disability in question was temporary and that the offer of unpaid leave was given to Mr. Morton with an eye to having him recover and return to work in his original, Carrier Technician role.  So, Defendant's unpaid leave argument is rejected.

Second, in reply, Defendant appears to advance a new argument, that the "July 2016 offer of a two-hour-workday custodian position was . . . a reasonable accommodation." Def.'s Reply 8, ECF No. 11. But, "[i]t is improper to rais[e] a new argument in a reply brief."  *Spires v. Schools*, 271 F. Supp. 3d 795, 804 (D.S.C. 2017) (first citing *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013); and then citing *Tyndall v. Maynor*, 288 F.R.D. 103, 108 (M.D.N.C. 2013)).  Therefore, the Court will not consider this new argument here.

record since January 13, 2015;" and "Defendant receiv[ed] evidence per the Appendix via the . . . Amended Complaint." *Id.*   As stated *supra*, none of these arguments are sufficient to overcome the administrative exhaustion bar.   Mr. Morton alternatively argues that he "would like for equitable tolling to be administered." *Id.*   But, after considering his arguments, he has not met his burden to show that equitable tolling is appropriate in these circumstances. *See* discussion *supra* Part III.E (discussing same in Title VII analysis); *cf. Figueroa-Ibarry*, 2021 WL 954843, at *4–5 (treating Title VII and RA equitable tolling standards as the same).

For those reasons, Mr. Morton's failure-to-provide-headphones RA claim does not survive, and the Court dismisses that portion of Count XIII with prejudice.[23]

## V.  CONCLUSION

For the reasons set forth above, the Court will grant Defendant's Motion to Dismiss in full. Plaintiff will be granted limited leave to amend.

An appropriate Order shall issue.

_____ /s/
Roderick C. Young
United States District Judge

Date:  September 04, 2024
Richmond, Virginia

---

[23] For the reasons stated *supra* n.19, the Court finds this failure to exhaust is a defect that cannot be cured, and thus amendment would be futile.