IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RUSSELL MORTON, JR. ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23CV618 (RCY) |
| ) | |
| LOUIS DEJOY, *Postmaster General,* ) | |
| *United States Postal Service,* ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

*Pro Se* Plaintiff Russell Morton, Jr. ("Plaintiff"), a former employee of the U.S. Postal Service, brings this action against Defendant Louis DeJoy, Postmaster General of the U.S. Postal Service ("Defendant"), after the Court granted Plaintiff leave to amend his claims relating to violations of the Federal Employees' Compensation Act and Rehabilitation Act. The case is before the Court on Defendant's Motion to Dismiss Third Amended Complaint, ECF No. 26. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss Third Amended Complaint.

**I. RELEVANT PROCEDURAL HISTORY**

On August 29, 2023, service was made upon Defendant with respect to a suit brought by Plaintiff in Richmond City Circuit Court. State Ct. R. at 3, ECF No. 1-1.[1,2] On September 28,

---

[1] Throughout this opinion, the Court utilizes the page numbers assigned by the CM/ECF system.

[2] The filing date of the state court action is not clear. While the Complaint bears a typewritten date of October 28, 2022, *see* State Ct. R. at 4, ECF No. 1-1, a review of the publicly available state court record associated with the case number on the state court documents, *see generally* State Ct. R., ECF No. 1-1 (showing Case No. CL21-3505), suggests that the state court action was initiated on July 23, 2021. *Cf. Johnson v. James B. Nutter & Co.*, 438 F. Supp. 3d 697, 704 (S.D.W. Va. 2020) ("Courts may . . . 'take judicial notice of docket entries, pleadings and papers in other

2023, Defendant timely removed this action from Richmond City Circuit Court, on the basis of USPS being a party to the suit.[3] *See* Notice of Removal 2, ECF No. 1; 28 U.S.C. § 1446(b)(1) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after [service]."). After Defendant filed a Motion for More Definite Statement, ECF No. 2, Mr. Morton filed an Amended Complaint, ECF No. 5. On November 6, 2023, Defendant filed a Motion to Dismiss, ECF No. 7, which the Court granted in full. ECF No. 18. However, the Court gave Plaintiff leave to amend his Federal Employees' Compensation Act ("FECA") claim (Count I, formerly Count XI) and his Rehabilitation Act claim (Count II, formerly Count XIII). *Id.*

Thereafter, Plaintiff filed a Second Amended Complaint ("SAC") on September 17, 2024. SAC, ECF No. 19. On September 26, 2024, Defendant moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). ECF No. 20. The Court granted Defendant's Motion and Plaintiff filed his Third Amended Complaint ("TAC") on October 3, 2024. TAC, ECF No. 25.[4] Defendant filed the instant Motion to Dismiss Third Complaint on October 17, 2024, Mem. Supp., ECF No. 27, and Plaintiff filed his Memorandum in Opposition on October 25, 2024, which this

---

cases without converting a motion to dismiss into a motion for summary judgment.'" (quoting *Brown v. Ocwen Loan Servicing, LLC*, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016))).

[3] "[A] suit against [the postmaster general] in his official capacity is treated as a suit against the Postal Service." *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). Mr. Morton does not explicitly use the term "official capacity," but he speaks of Defendant's "role as Postmaster General," Am. Compl. ¶ 4, and brings claims that can only be brought against heads of agencies in their official capacity, *see, e.g.*, *Levesy v. Scolese*, 2023 WL 5835763, at *6 (E.D. Va. Sept. 7, 2023) (Title VII and Rehabilitation Act claims must be brought against the "head of an agency in his official capacity"), *aff'd*, No. 23-2005, 2024 WL 1366769 (4th Cir. Apr. 1, 2024); *see also* discussion *infra* Part IV.

[4] The Court will not consider the contents of Plaintiff's Second Amended Complaint as Plaintiff's Third Amended Complaint "supersedes . . . and becomes the operative complaint in the case, [and] renders the [previous] complaint[s] of no effect." *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017). However, the Court will consider the "Appendix" originally attached to Plaintiff's Second Amended Complaint for two reasons. First, the Third Amended Complaint was filed to remedy the structure of the Second Amended Complaint, not the substance of it. SAC Ex. A [hereinafter, TAC App.], ECF No. 19-1. Further, Plaintiff explicitly references the Appendix in his TAC and Defendant's references the Appendix in its Motion to Dismiss Third Complaint. *See e.g.*, TAC ¶¶ 4.1, 4.3; Mem. Supp. 8.

Court construes as Plaintiff's Response. Mem. Opp'n, ECF No. 32. Defendant filed its reply on October 31, 2024. Reply, ECF No. 34. Accordingly, the motion is ripe for review.

## II. BACKGROUND

### A. Factual Allegations

Plaintiff worked as a Carrier Technician at the U.S. Postal Service ("USPS") Petersburg post office. TAC ¶ 1.1, ECF No. 25. After a work-related injury, Plaintiff was placed in the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP").[5] *See id.* ¶ 3.5–3.6. Sometime in 2016, Plaintiff had his OWCP status removed. *See id.* ¶¶ 4.20. Plaintiff appealed that removal decision. *Id.*

From April 2016 to July 2016, Plaintiff worked in a non-Carrier assignment that involved answering phones at a desk and assisting management, a sedentary position. *Id.* ¶¶ 3.3, 7.11. During this time, in May 2016, Plaintiff had a meeting with the District Reasonable Accommodation Committee ("DRAC").[6] *Id.* ¶ 4.3. In this meeting, Plaintiff provided a form that expressed his neurologist's desire for Plaintiff to stay away from performing Carrier duties. *Id.* ¶¶ 3.9, 4.3. Plaintiff also had a meeting on June 17, 2016 with supervisors and explained that he "was Light Duty per his OWCP being denied." *Id.* ¶ 4.1.

In July 2016, Plaintiff was placed on "Light Duty"[7] and was offered a custodian position with a two-hour workday at the Petersburg Walnut Hill station. *Id.* ¶¶ 4.1, 4.6, 4.7. Plaintiff was supposed to use his leave to be compensated for a full, eight-hour workday. *Id.* ¶ 4.7. Plaintiff

---

[5] OWCP administers the Federal Employees' Compensation Act ("FECA"). *E.g.*, 20 C.F.R. § 10.1.

[6] USPS uses the DRAC to address employees' reasonable accommodation requests pursuant to the Rehabilitation Act. *E.g.*, *Eggen v. DeJoy*, 2021 WL 6926446, at *2 (D. Neb. Dec. 28, 2021).

[7] Within the USPS's administrative structure, "light duty" status refers to a less strenuous work assignment "'available to those employees whose limitations are not due to occupational injury or illness,' but rather to 'injur[ies] outside of their job duties.'" *Franklin v. Potter*, 600 F. Supp. 2d 38, 51 (D.D.C. 2009) (first quoting *Peebles v. Potter*, 354 F.3d 761, 764 n.3 (8th Cir. 2004); and then quoting *Hancock v. Potter*, 531 F.3d 474, 477 (7th Cir. 2008)).

3

declined the position because he did not have enough paid leave and because the job was not sedentary. *Id.* ¶ 4.9.

Plaintiff was told on July 7, 2016 to not return to work until USPS found a position for him. *Id.* ¶ 4.11. Plaintiff then "filed a grievance," *id.* ¶ 4.12, and went on leave without pay. *Id.* ¶ 4.20. On August 29, 2016, Plaintiff received a text message from a co-worker that another Carrier, Ms. Walker, was leaving and had received a job at USPS Sandston Distribution Center ("Sandston"). *Id.* ¶ 4.13. Plaintiff confronted his supervisor about Ms. Walker's reassignment and was told that Ms. Walker went through the DRAC system, which Plaintiff was currently enrolled in. *Id.* ¶ 4.14.

In January 2017, OWCP granted Plaintiff's appeal, providing him compensation. *Id.* ¶ 4.24. Around that same time, Plaintiff then filed paperwork for Medical Disability Retirement. *Id.* ¶ 4.16.

In February 2017, Plaintiff went to the Petersburg station and saw a "Caucasian/White woman sitting [at] one of the back offices at a desk answering the telephone with no computer access." *Id.* ¶ 4.25. Plaintiff learned from a coworker that the woman was "Julie," from the Colonial Heights station, and that "all she does it sit there and just answer the telephone all day." *Id.* ¶ 4.26.

In March 2017, Mr. Morton was offered a position with USPS, but he declined the position "mainly because it had USPS Carrier duties." *Id.* ¶¶ 4.29–4.30. According to Plaintiff, the position "still had carrier duties," and per his doctor's orders, Plaintiff "[was] to have only sedentary work." *Id.* ¶ 4.29. Shortly thereafter, in June 2017, Plaintiff had an anterior cervical discectomy and fusion neck procedure. *Id.* ¶ 4.31–4.32.

As time passed, "OWCP wanted [Plaintiff] to return to the USPS or they were going to terminate his claim for compensation." *Id.* ¶ 4.33. As a result, Plaintiff was "in contact with his Supervisor Chantel Brown about returning to work and only doing sedentary work." *Id.* ¶ 4.34.

On November 6, 2017, Plaintiff was offered a "Limited Duty"[8] position where he would be performing the same sedentary job duties as he was doing from April to July 2016. *Id.* ¶ 4.36. Plaintiff accepted the offer, and he returned to work in that Limited Duty role at the Petersburg station on November 13, 2017. *Id.* ¶ 4.36. Upon Plaintiff's return to the office, "Julie" was removed from the position. *Id.* ¶ 4.37.

That same month, the Office of Personnel Management ("OPM") approved Plaintiff's application for Disability Retirement. *Id.* ¶ 4.41. On November 17, 2017, Plaintiff received his Disability Retirement award letter. *Id.* Plaintiff "didn't know that he was not due to return to the USPS the following week of November 20." *Id.* On November 30, 2017, Plaintiff made his "final departure" from USPS, "[up]on receiving his OWCP Disability Award Letter." *Id.* ¶ 4.41.

**B. Administrative Claim History**

Plaintiff's Amended Complaint contains only a barebones allegation that he "filed a grievance" at some point between July 2016 and August 2016. Am. Compl. ¶ 18; *see id.* ¶¶ 17, 19. However, Plaintiff's original, now-superseded Complaint alleged that he filed a formal EEOC complaint on September 9, 2016. Compl. 5, ¶ 4, ECF No. 1-1. This is corroborated by the copy of the EEOC complaint filed by Defendant. *See* Def.'s Mem. Supp. Ex. A, ECF No. 8-1 ("EEOC Complaint").[9]

---

[8] "For workplace injuries," USPS "offers 'limited duty' assignments, which are distinct from 'light duty' assignments for non-workplace injuries." *Franklin*, 600 F. Supp. 2d at 58 n.7 (citations omitted). OWCP "is required to provide for limited duty jobs to accommodate employees with compensable job-related injuries." *Gantner v. Potter*, 2007 WL 3342305, at *3 (W.D. Ky. Nov. 7, 2007) (citing 20 C.F.R. § 10.507).

[9] At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and are authentic, and matters

## III. STANDARD OF REVIEW

Defendant seeks dismissal of this action based on both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court discusses below the respective standards for each.

### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) tests a court's subject matter jurisdiction over a claim. Motions under Rule 12(b)(1) attack jurisdiction in one of two ways: facially or factually. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). On a facial attack, the movant argues that the complaint fails on its face to allege facts on which subject matter jurisdiction can be based. *Id.* In such a case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). So, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* A factual attack on jurisdiction, on the other hand, challenges the factual allegations underlying the assertion of jurisdiction. *Id.* In either circumstance, "the burden of proof on a Rule 12(b)(1) motion is on the party asserting that subject matter jurisdiction exists," typically the plaintiff. 5B Charles A. Wright, Arthur R. Miller, & A. Benjamin Spencer, *Federal Practice & Procedure* § 1350 (4th ed. 2024); *see Moore v. Gregory*, 2024 WL 1774819, at *4 (E.D. Va. Apr. 24, 2024) (citing *Piney Run*

---

of public record subject to judicial notice. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing Fed. R. Civ. P. 10(c); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Several courts in this circuit have found it appropriate to consider an EEOC complaint at the motion to dismiss stage, without converting the motion to one for summary judgment, either determining that it is a document of which a court may take judicial notice, *see Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 538 n.3 (E.D.N.C. 2008), or because the document is deemed integral to the complaint and unchallenged, *e.g.*, *Smith v. Dupont Specialty Prods. USA, LLC*, 2023 WL 7703470, at *3 n.4 (E.D. Va. Nov. 15, 2023) ("The Court may examine the plaintiff's . . . EEOC charge, attached to the . . . defendant's memorandum in support of its motion to dismiss . . . because [it is] integral to and explicitly relied on in the Amended Complaint."); *Brown v. Inst. for Fam. Centered Servs.*, 394 F. Supp. 2d 724, 728 n.2 (M.D.N.C. 2005) (determining EEOC charge to be integral to the complaint inasmuch as "Plaintiff must rely on it to establish [he] has exhausted [his] administrative remedies"). This Court similarly finds it appropriate to consider the EEOC Complaint here.

*Pres. Ass'n v. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008)). A court may grant a Rule 12(b)(1) motion and grant the plaintiff leave to amend, but a Rule 12(b)(1) dismissal without leave to amend is proper when the pleader "cannot truthfully amend" to cure the jurisdictional defect. Wright, Miller, & Spencer, *supra*, § 1350.

**B. Rule 12(b)(6) Standard**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff's well-pleaded factual allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). Notably here, a *pro se* complaint is "to be liberally construed" and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). "But

7

liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). So, a *pro se* complaint "must nevertheless set forth enough facts to state a claim." *Erwin v. FedEx Freight, Inc.*, 2023 WL 5959422, at *2 (E.D. Va. Sept. 13, 2023). "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Iqbal*, 556 U.S. 662, 678.

## IV. DISCUSSION

Plaintiff's Third Amended Complaint attempts to cure his two remaining claims following the Court's order granting Defendant's Motion to Dismiss. Those claims are: (1) violation of the Federal Employees' Compensation Act ("FECA," Count I), and (2) violations of the Rehabilitation Act of 1973 ("Rehabilitation Act," Count II). Am. Order, ECF No. 18; TAC ¶¶ 6.1–6.33, 7.1–7.29. Plaintiff seeks $50 million in various damages. TAC 36.

Plaintiff has not persuaded the Court that it has subject matter jurisdiction over his FECA claim. And, Defendant has convinced the Court that Plaintiff again fails to state a claim under the Rehabilitation Act. Therefore, the Court will dismiss both Count I and Count II with prejudice, as Plaintiff failed to cure the deficiencies identified in his Amended Complaint. *See* Am. Order; Fed. R. Civ. P. 41(b).

### A. The Court Lacks Jurisdiction Over Count I (FECA)

Plaintiff's Count I alleges that Defendant "failed to provide a job offer of restoration per

. . . . FECA." TAC ¶ 6.19.[10]  After granting Defendant's previous Motion to Dismiss, the Court gave Plaintiff leave to amend his FECA claim, to "plead more facts as to whether he ever appealed his restoration claim to the Merit Systems Protection Board" ("MSPB"), Am. Order, because the Court does not have jurisdiction for judicial review absent a MSPB decision. *Morton v. DeJoy*, 2024 WL 4045451, at *9 (E.D. Va. Sept. 4, 2024) (quoting *McDaniel v. Potter*, 2009 WL 10671422, at *10–11 (C.D. Cal. May 7, 2009)).  As discussed in its prior opinion, "claims related to restoration of employment" alleging violations of these rights, i.e. FECA claims, "must be presented to the Merit Systems Protection Board" ("MSPB"). *Hicks v. Potter*, 2011 WL 13196430, at *4 (E.D. Va. Mar. 28, 2011) (first citing 5 U.S.C. § 8151; and then citing 5 C.F.R. § 353.304)); *accord Nurriddin v. Acosta*, 327 F. Supp. 3d 147, 151 (D.D.C. 2018) (citing 5 C.F.R. § 353.304).

Here, as Defendant correctly points out, Plaintiff admits "there's no appeal restoration claim filed with the MSPB." TAC ¶ 6.33; *see also id.* ¶¶ 6.1, 6.5, 6.7; Mem. Supp. 11–13.[11] Therefore, in line with precedent from this District, "the Court cannot consider [Mr. Morton's] claim[] related to restoration of employment" in Count I; he has admitted that he failed to present this claim to the MSPB, which ultimately "depriv[es] this Court of jurisdiction." *Hicks v. Potter*, 2011 WL 13196430, at *4 (citation omitted); *accord McDaniel v. Potter*, 2009 WL 10671422, at *10–11 (C.D. Cal. May 7, 2009).

---

[10] Although Plaintiff does not specify a FECA provision in his TAC, *see* TAC ¶¶ 6.1–6.33, the Court agrees with Defendant that Plaintiff's claim necessarily falls under 5 U.S.C. § 8151(b) because that provision specifically addresses claims for restoration of employment following an injury or disability "within a period of more than one year after the date of commencement of compensation." 5 U.S.C. § 8151(b); Mem. Supp. 11. Plaintiff's Memorandum in Opposition also explicitly references 5 U.S.C. § 8151. Mem. Opp'n 4.

[11] To the extent Plaintiff raises a Due Process argument in his Memorandum in Opposition, that argument fails as Plaintiff may not amend his TAC via briefing. Mem. Opp'n 4–8. It is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss," even when the plaintiff is proceeding *pro se*. *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)) (case involving *pro se* plaintiff); *cf. Willner v. Dimon*, 849 F.3d 93, 114 (4th Cir. 2017) (affirming district court's denial of *pro se* plaintiffs' request for leave to amend that was made in their briefs, but not in a formal motion to amend).

For these reasons, the Court will dismiss Plaintiff's Count I with prejudice.

## B. Plaintiff Fails to State a Claim on Count II (Rehabilitation Act)

Count II alleges that Defendant violated the Rehabilitation Act by failing to provide Plaintiff with sedentary/desk position. *See* TAC ¶¶ 7.5, 7.6, 7.20, 7.22. The Court granted Plaintiff leave to amend his Rehabilitation Act claim to include information establishing that the following jobs existed and were vacant at the time Plaintiff was seeking a job: (1) the "job position at the USPS Sandston Distribution Center," and (2) the "desk" job at "one of the back offices" which involved "answering the telephone with no computer access" (hereinafter Petersburg desk job). Am. Order. Defendant alleges that Plaintiff's Rehabilitation Act claim fails for two reasons: first, Plaintiff failed to exhaust his administrative remedies regarding the Petersburg desk job; and second, Plaintiff failed to allege that either job was vacant or a reasonable accommodation for Plaintiff's needs. Mem. Supp. 14–18. For the reasons set forth below, neither instance amounts to an actionable failure to accommodate claim.

"The [Rehabilitation Act] expressly incorporates the standards applied under the Americans with Disabilities Act (ADA), § 794(d), which also bars discrimination against a 'qualified individual on the basis of disability,' 42 U.S.C. § 12112(a)." *Terry v. Perdue*, No. 20-2016, 2021 WL 3418124, at *2 (4th Cir. Aug. 5, 2021) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995)). Thus, incorporating the ADA standard, to state a claim for failure to accommodate,

> the plaintiff must show: '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'

*Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (alterations in original) (quoting *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)); *see also Okebata v. Dep't of Def.*, 2022

WL 3754201, at *6 (E.D. Va. July 29, 2022) (applying *Rhoads* standard in RA case)*, aff'd*, No. 22-1899, 2023 WL 7212271 (4th Cir. Nov. 2, 2023).

The Court first addresses Defendant's administrative exhaustion argument before turning to the sufficiency of Plaintiff's claim.

1. Administrative Exhaustion

Defendant argues that the Court should Dismiss Plaintiff's Petersburg desk job claim because Plaintiff failed to exhaust his administrative remedies on the issue.

"Federal employees . . . who seek to enforce their rights under . . . the Rehabilitation Act must exhaust their available administrative remedies before pursuing an action in federal court." *Melendez v. Sebelius*, 611 F. App'x 762, 763 (4th Cir. 2015) (per curiam) (collecting statutes, binding cases, and regulations); *see Emmert v. Runyon*, 178 F.3d 1283 (4th Cir. 1999) (per curiam) (unpublished table opinion) (collecting authorities). "The requirements of administrative exhaustion are 'mandatory,' although not jurisdictional," so they are matters to take up via Rule 12(b)(6). *Figueroa-Ibarry v. Rennick*, 2021 WL 954843, at *4 (E.D. Va. Mar. 12, 2021) (quoting *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 551 (2019)).

"It is well settled that before filing suit under Title VII . . ., a plaintiff must exhaust [their] administrative remedies by bringing a charge with the EEOC." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b), (f)). "A plaintiff's EEOC charge defines the scope of [their] subsequent right to institute a civil suit." *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (alteration omitted) (quoting *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019)). The Fourth

11

Circuit has clarified that "reasonably related" does not require the claims to be "precisely the same" so long as there are sufficient similarities between the EEOC charge and the suit filed. *Syndor v. Fairfax Cnty.*, 681 F.3d 591, 595 (4th Cir. 2012) (considering whether the claim is the "same type of discrimination" as alleged in the EEOC charge, whether the defendant "was on notice," and whether the EEOC charge and law suit included the same time frame, actors, and conduct).

Defendant contends that Plaintiff failed to exhaust his administrative remedies because his EEOC charge was limited to the June and July 2016 alleged incidents of disability discrimination and did not include any information about the Petersburg desk job. Reply 4; Mem. Supp. 14. Plaintiff's response is not entirely responsive to Defendant's exhaustion argument; however, Plaintiff disagrees, in part, because USPS EEO failed to contact Plaintiff until two years after he initially filed his EEOC charge. Mem. Opp'n 8.

The Court does not find that Plaintiff failed to exhaust his administrative remedies with respect to the Petersburg desk job. Construing Plaintiff's TAC liberally, the Court finds that Plaintiff's instant claim is reasonably related to his original EEOC charge as Plaintiff's EEOC charge specifically references the Rehabilitation Act of 1973, the DRAC's responsibility to find a job to reasonably accommodate Plaintiff, and the Sandston job. Mem Supp. Ex. A [hereinafter EEOC Charge], ECF No. 27-1. Therefore, assuming that the Petersburg desk job existed and was vacant at the time, it is reasonable to conclude that a "reasonable investigation of the original complaint" would have included the Petersburg desk job. *See Walton*, 33 F.4th at 172. The same type of discrimination—failure to accommodate—is alleged in Plaintiff's TAC as his EEOC Charge, and Defendant was on notice "from the beginning that it was accused of not providing a disabled plaintiff with a reasonable accommodation." *Syndor*, 681 F.3d at 595; *compare* TAC ¶¶ 7.1–7.29, *with* EEOC Charge. Therefore, the Court finds that the Petersburg desk job is reasonably

related to Plaintiff's EEOC Charge, and thus, Plaintiff exhausted his administrative remedies.

Whether the Petersburg desk job existed at the time or was a reasonable accommodation for Plaintiff is a separate question that the Court will address below.

2. <u>Vacancy and Reasonable Accommodation</u>

Next, the Court addresses Defendant's remaining argument. That is, whether Plaintiff adequately alleges that the Sandston Distribution Center or the Petersburg desk job position existed, were vacant, and constituted a reasonable accommodation.

As discussed in the Court's previous opinion, this inquiry on a failure to accommodate claim "proceeds in two steps. First, was the specific accommodation requested by [the employee] reasonable? Second, had [the employer] granted the accommodation, could [the employee] perform the essential functions of the position?" *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580 (4th Cir. 2015) (citing *Wilson*, 717 F.3d at 345).

As a general matter, "[a] 'reasonable accommodation includes a modification or adjustment to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position.'" *Anderson v. Sch. Bd. of Gloucester Cnty.*, 2022 WL 732231, at *9 (E.D. Va. Mar. 10, 2022) (quoting *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959–60 (4th Cir. 2021)). In certain instances, "[r]easonable accommodation may include reassignment to a vacant position." *Fields v. Clifton T. Perkins Hosp.*, 605 F. App'x 200, 201 (4th Cir. 2015) (per curiam) (quoting *EEOC v. Stowe–Pharr Mills, Inc.*, 216 F.3d 373, 377 (4th Cir. 2000)); *accord Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996) (An employer "may [be] require[d] . . . to reassign a disabled employee to a different position as reasonable accommodation where the employee can no longer perform the essential functions of

their current position.").

"[A] plaintiff can adequately plead the third element of a failure to accommodate claim by alleging that he requested a transfer to a vacant position" with essential functions he could perform when he can no longer execute the essential functions of his original position. *Harris v. Powhatan Bd. of Supervisors*, 2020 WL 7388626, at *3 (E.D. Va. Dec. 16, 2020). But, it is critical that the plaintiff adequately allege that the new position already (1) is vacant and (2) exists. *Id.* The Rehabilitation Act "only requires reassignment to a *vacant* position as an accommodation for an employee with a disability." *Salmoiraghi v. Veritiss, LLC*, 2022 WL 1036769, at *15 (E.D. Va. Apr. 6, 2022) (quoting *Perdue*, 999 F.3d at 960), *aff'd*, No. 22-1521, 2023 WL 5289371 (4th Cir. Aug. 17, 2023); *see also Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 506 (E.D. Va.) ("[A]n employer need not 'bump' an employee from an existing position in order to accommodate a person with a disability." (citation omitted)), *aff'd*, 250 F. App'x 552 (4th Cir. 2007). And, importantly, the RA "does not require that an employer create a new position for a disabled employee." *Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 n.3 (4th Cir. 2020).

### a. The Job Position at the USPS Sandston Distribution Center

Defendant argues that Plaintiff both fails to ariculate sufficient facts to establish that the Sandston Distribution Center job was vacant at any time or that the Sandston Distribution Center job was a reasonable accommodation. Mem. Supp. 16. Plaintiff disputes Defendant's reading of the TAC. Mem. Opp'n 12–14. Plaintiff contends that the position was obviously vacant because Ms. Walker could not have otherwise filled the position. *Id.* at 14. Further, Plaintiff argues that Ms. Walker was placed in that role because she was injured and could not complete her Carrier duties. *Id.*

Here, the TAC adds little information about the Sandston Distribution Center job or about

Ms. Walker. The TAC does state that Ms. Walker was injured and that Plaintiff learned that Ms. Walker had received a position at the USPS Sandston Distribution Center. TAC ¶¶ 4.13, 7.1. However, the TAC includes no information about the job that Ms. Walker accepted, what the duties or responsibilities that job entailed, or whether it would be a reasonable accommodation for Plaintiff. *See generally* TAC. Even considering the letter from Korey Smith, who was the former NALC #326 Union President and USPS Training Specialist, the information contained therein confirms that Ms. Walker was injured, that she was a part of DRAC, and that DRAC found her a job at USPS Sandston Distribution Center as a Mail Processing Associate. TAC App. 68. The letter does not contain any information about when Ms. Walker was moved into the new position, if or when the position was vacant, and whether the Mail Processing Associate position would have been appropriate for Plaintiff. *See id.*

Although Plaintiff alleges that Ms. Walker was also injured, Plaintiff alleges no facts about the new position, *see generally id.*, leaving the Court unable to discern whether that position was a purely sedentary one with essential functions Plaintiff could perform. Thus, the Court cannot conclude that the Sandston position would have been a reasonable accommodation for Plaintiff.

      b. Petersburg Desk Job

Defendant argues that Plaintiff's allegations do not amount to a plausible claim for relief under the Rehabilitation Act because Plaintiff does not allege that the Petersburg desk job was vacant or that it was a reasonable accommodation for Plaintiff. Mem. Supp. 17–18. Specifically, Defendant contends that the Petersburg desk job was filled by "Julie" and points out that Plaintiff admitted the position was not vacant because it was a limited duty assignment. *Id.* at 17. Defendant also contends that the position is not a reasonable accommodation because it includes "carr[ying] the Aux[iliary] route R[ural]023" as a part of its duties, which Plaintiff could not

15

complete given his disability. *Id.* Again, Plaintiff disagrees. *See* Mem. Opp'n 14. Plaintiff argues that the position was filled by "someone else from another station . . . which would be considered a vacancy"[12] when he left in July 2016, and that when he returned in November 2017, "Julie was removed" and then "returned to the position" after Plaintiff left. *Id.*

Plaintiff fails to sufficiently allege facts, even when construed liberally, that the Petersburg desk job was vacant, that it existed, or that the Petersburg desk job was a reasonable accommodation.

First, Plaintiff alleges that Julie, who filed the Petersburg desk job from March 2017 to March 2018, "perform[ed] the same sedentary modified job position" as Plaintiff's July 16 position and that the position became vacant when he left in July. TAC ¶ 7.22; TAC App. 31. However, the Court is not convinced from Plaintiff's TAC that the Petersburg desk job is the same as Plaintiff's July 2016 position. *Compare id.* ¶ 7.20 (noting that Julie ended up at Petersburg doing what he was doing in July 2016, which was answering phone, and implying that she filled his July 2016 role), *and id.* ¶ 7.22 ("Julie was performing the same sedentary modified job position."), *and id.* ¶ 7.27 (commenting that Julie left the position when Plaintiff returned in November 2017), *with id.* ¶ 7.11 ("[Plaintiff] was operating as [his boss's] assistant doing the *same yet more* as Julie via a sedentary modified job position that included computer and telephone access as well as assisting other management (conducting managerial duties), Clerks, Carriers, and customers at the station which began on April 27, 2016." (emphasis added)), *and id.* ¶¶ 7.12–14 (describing the additional duties he had in his July 2016 role that appeared to be absent from Julie's role, i.e. the Petersburg desk job), *and* TAC App. 31 (Julie's "limit[ed] duty assignment" included "answering the phones,

---

[12] It is not clear if Plaintiff is referencing Julie or another individual since Julie's tenure at the "Petersburg Desk Job" lasted from March 2017 through March 2018. TAC App. 31.

16

computer programing[,] filing[,] and carrying the Aux route R023"). Although Plaintiff states that his July 2016 role became vacant when he left, the role that he and "Julie were in wasn't a vacant position that would be placed within the USPS . . . system where jobs are present [because] it was created specifically for Mr. Morton." TAC ¶ 7.16.

Indeed, Julie's role, i.e. the Petersburg desk job, was also a "limit[ed] duty assignment," TAC App. 31, suggesting that her role was created specifically for her. *See Peebles v. Potter*, 354 F.3d 761, n.3 (8th Cir. 2004) ("Limited duty refers to the modifications of a position required by law when an employee suffers an occupational injury or illness." (citing 5 U.S.C. § 8151(b)); *see also Brown v. Brennan*, 2019 WL 13251354, at * (N.D. Ca. Oct. 7, 2019) ("[L]imited duty assignments for the employee . . . are consistent with the medically prescribed physical restrictions and that match as closely as possible the employee's permanent position . . . . [and] are temporary assignments designed specifically for the limited duty employee."). Absent facts that demonstrate that the Peterburg desk job existed before Julie's limited duty, Plaintiff has not sufficiently alleged that the Petersburg desk job existed and was vacant.

Even if the Court found that the Petersburg desk job existed and was vacant, Plaintiff fails to allege that it was a reasonable accommodation for Plaintiff. Although Plaintiff alleges that he only "witnessed [Julie] performing the one duty of answering the phone," Plaintiff also attached a letter from the Postmaster which states that part of Julie's "limit[ed] duty assignment," in the Petersburg desk job, requires her to "carry the Aux[iliary] route R023." TAC App. 31; *see, e.g.*, *Alexidor v. Doahoe*, 2016 WL 5720789, at *6 (S.D.N.Y. Sept. 30, 2016) (describing that the assigned letter carrier is expected to and deliver mail in less than eight hours on an auxiliary route and that the route is commonly assigned to "letter carriers who are unable to work a full [eight] hour day such as . . . carriers with physical limitations"); *Brown*, 2019 WL 13251354, at * 11

(noting auxiliary routes "do not constitute a full route"); *Dayoan v. Dejoy*, 2022 WL 17177714, at *2 (M.D. Ga. Nov. 23, 2022) (referring to an auxiliary route as "aux").  Plaintiff does not address this additional duty in his TAC or in his Memorandum in Opposition.  *See generally* TAC; Mem. Opp'n.  Therefore, Plaintiff has not sufficiently alleged that the Peterburg desk job would have been a reasonable accommodation for him because Plaintiff was unable to complete carrier duties.  *See, e.g.*, TAC ¶¶ 4.29, 4.30.

As explained above, the Court finds that Plaintiff's claim stemming from Defendant's failure to provide a sedentary/desk position is substantively insufficient.  "[A]bsent more facts demonstrating what [these] job[s] entailed that made it a reasonable accommodation for [Plaintiff]" in this case, and facts demonstrating that the Petersburg desk job existed, these allegations "are insufficient to 'state a claim for relief that is plausible on its face.'"  *See Bailey v. Klockner Pentaplast of Am., Inc.*, 2017 WL 4081876, at *1 (W.D. Va. Aug. 4, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Therefore, the Court will dismiss Count II in full.

## V.  CONCLUSION

For the reasons set forth above, the Court will grant Defendant's Motion to Dismiss Third Amended Complaint in full.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 30, 2025
Richmond, Virginia